IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FATIMA MARIA RAMIREZ RUANO     :

    :

      v.                       :    Civil Action No. DKC 23-2461

    :

SCRATCH KITCHEN & BISTRO, LLC,
et al.                         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this wage dispute case are: (1) a motion to dismiss filed by Defendant Bernadette C. Rousseau ("Ms. Rousseau"), (ECF No. 20); and (2) a motion to dismiss filed by Defendant Vital Correia ("Mr. Correia"), (ECF No. 38).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Ms. Rousseau's motion to dismiss will be granted in part and denied in part, and Mr. Correia's motion to dismiss will be granted.  Plaintiff will be granted a period of 21 days within which to file an Amended Complaint.

## I.  Background

The following facts are alleged in the complaint.  (ECF No. 1).  From approximately August 2022 to August 2023, Plaintiff Fatima Maria Ramirez Ruano ("Plaintiff") worked as a cook and permanent employee for Defendant Scratch Kitchen & Bistro, LLC ("Scratch Kitchen"), a restaurant owned and operated by Ms.

Rousseau.  (*Id.* ¶¶ 1, 11, 17-18, 21).  Plaintiff also alleges, on information and belief, that Mr. Correia owns and operates Scratch Kitchen and "Defendants, in the aggregate and in the individual, have had an annual gross volume of sales make or business done in an amount exceeding $500,000.00[.]"  (*Id.* ¶¶ 12-13).

Throughout Plaintiff's employment, Ms. Rousseau and Mr. Correia (1) "[h]ired and/or disciplined Plaintiff, and/or had the power to hire, fire, suspend, and otherwise discipline Plaintiff;" (2) "[s]upervised Plaintiff's work duties, and/or had the power to hire, fire, suspend, and otherwise discipline Plaintiff;" (3) "[s]et and controlled Plaintiff's work schedule, and/or had the power to set and control her work schedule;" (4) "[s]et and controlled Plaintiff's conditions of employment, and/or had the power to set and control her conditions of employment;" (5) "[s]et, determined, and decided, and/or had the power to set, determine, and decide Plaintiff's rate, method, and manner of pay;" (6) "[c]ontrolled and had decision-making power regarding Plaintiff's day-to-day duties and responsibilities, and/or was directly and/or indirectly in charge of her day-to-day duties and responsibilities;" and (7) "[c]ontrolled Plaintiff's employment records, and/or had the power to control and/or maintain her employment records."  (*Id.* ¶ 33).  Plaintiff contends that she was not exempt from federal and state laws requiring employers to compensate employees for overtime work.  (*Id.* ¶ 34).

2

Plaintiff alleges that, despite the fact that she worked more than fifty hours per week, Defendants refused to compensate her for any overtime work on the basis that she was a contractor rather than an employee.  (*Id.* ¶¶ 2, 25-28, 30-31).  In addition, Plaintiff alleges that Defendants failed to pay her approximately $500 in wages for her final week of employment.  (*Id.* ¶¶ 3, 32).

On August 10, 2023, after the termination of her employment, Plaintiff contacted Ms. Rousseau via text message to demand payment of her unpaid wages.  (*Id.* ¶ 37).  Ms. Rousseau responded by threatening to report Plaintiff to the U.S. Immigration and Customs Enforcement ("ICE").  (*See id.* ¶¶ 37-42).  On September 7, 2023, Ms. Rousseau filed an Interim Peace Order in the District Court of Maryland for Montgomery County seeking to prevent Plaintiff from contacting her, Mr. Correia, and all of Scratch Kitchen's contractors.  (*Id.* ¶¶ 46, 50).

On September 11, 2023, Plaintiff filed a complaint alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.,* and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.*  (*Id.* ¶¶ 54-80).  In Counts I and III, Plaintiff alleges that Ms. Rousseau, Mr. Correia, and Scratch Kitchen (collectively, "Defendants") violated the FLSA and MWHL respectively by refusing to compensate her for overtime work.  (*Id.* ¶¶ 54-60, 69-74).  In

Count II, Plaintiff alleges that Defendants violated the FLSA by retaliating against her via threats of reporting her to ICE and filing the Interim Peace Order. (*Id.* ¶¶ 61-68). In Count IV, Plaintiff alleges that Defendants violated the MWPCL by failing to pay wages and withholding approximately $500 from Plaintiff's final paycheck. (*Id.* ¶¶ 75-80).

On September 28, 2023, Ms. Rousseau filed a motion to dismiss. (ECF No. 20). The parties engaged in lengthy settlement discussions during which the case was stayed. Unfortunately, the efforts were unsuccessful. Thereafter, on February 22, 2024, Mr. Correia filed a motion to dismiss. (ECF No. 38). On March 7, 2024, Plaintiff opposed Mr. Correia's motion to dismiss. (ECF No. 39). On March 22, 2024, Plaintiff opposed Ms. Rousseau's motion to dismiss. (ECF No. 40). Ms. Rousseau and Mr. Correia did not reply.

Beginning on October 11, 2023, Scratch Kitchen was represented by Clifford B. Geiger ("Mr. Geiger") and Jordan F. Dunham ("Mr. Dunham"). (ECF Nos. 22; 23). After the unsuccessful settlement discussions, on February 14, 2024, Mr. Geiger and Mr. Dunham moved to withdraw. (ECF No. 36). Scratch Kitchen was notified that, unless new counsel entered an appearance, a default could be entered against it on Plaintiff's claims. (ECF No. 37). On March 26, 2024, the court granted Mr. Geiger and Mr. Dunham's motion to withdraw as counsel for Scratch Kitchen and their

4

appearance was stricken on behalf of Scratch Kitchen.   (ECF No. 41).   Because Scratch Kitchen can appear in this court only through a licensed attorney, it was directed to show cause, no later than April 9, 2024, why a default should not be entered as to the claims against it.   (*Id.*).   Despite these warnings, counsel has not entered an appearance for Scratch Kitchen.   Nor has Scratch Kitchen shown why entry of default would be improper.   Accordingly, the Clerk will be directed to enter Scratch Kitchen's default.

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.   *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).   Generally, a plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."   *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver,* 510 U.S. 266, 268

(1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, unsupported legal allegations need not be accepted.   *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989).   Moreover, legal conclusions couched as factual allegations are insufficient, *Iqbal,* 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).   The court may only consider the complaint, documents attached to the complaint, documents explicitly incorporated into the complaint by reference, and documents integral to the complaint where there is no dispute as to the documents' authenticity. *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sec'y of State For Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)).[1]

---

[1] The court may consider Exhibit 3 to Ms. Rousseau's motion to dismiss (the "Text Messages"), consisting of a text message conversation between Plaintiff and Ms. Rousseau, because some of those text messages were incorporated into the complaint by reference and Plaintiff does not dispute Exhibit 3's authenticity. (ECF No. 20-2).   The court, however, will not consider the other exhibits attached to Ms. Rousseau and Mr. Correia's motions to

## III. Ms. Rousseau's Motion to Dismiss

Ms. Rousseau urges the court to dismiss Plaintiff's overtime wage claims[2] against her because (1) Plaintiff was an independent contractor rather than an employee; (2) Plaintiff was not legally authorized to work in the United States due to her immigration status; (3) Plaintiff already received the full sum of her final paycheck; and (4) Scratch Kitchen does not earn over $500,000 annually. (ECF No. 20, at 1-3). Plaintiff counters that (1) she has alleged sufficient facts to establish that she was an employee; (2) her immigration status does not prevent recovery under the FLSA and MWHL; (3) she seeks damages for all unpaid wages beyond the sum of her final paycheck; and (4) Ms. Rousseau has not produced any evidence, other than her unverified assertion, that Scratch Kitchen earns less than $500,000 annually. (ECF No. 40, at 5-11).

### A. Employment Status

Under the FLSA and MWHL, only employees, and not independent contractors, are authorized to seek recovery for unpaid wages. *See Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006) (distinguishing between FLSA-covered employees and

---

dismiss because they were not referenced in or integral to the complaint. (ECF Nos. 20-1; 20-3; 20-4; 20-5; 38-1).

[2] As Plaintiff notes, the complaint advances "two overtime wage claims (Count I under the FLSA and Count III under the MWHL)." (ECF Nos. 40, at 2; 39, at 1 n.1).

independent contractors); *Heath v. Perdue Farms, Inc.*, 87 F.Supp.2d 452, 456 (D.Md. 2000) (stating that the defendant is only liable for overtime violations under the FLSA or MWHL if there is an employment relationship between the defendant and plaintiffs). "[T]o determine whether a worker is an employee under the FLSA, courts look to the '"economic realities" of the relationship between the worker and the putative employer.'" *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016) (quoting *Schultz*, 466 F.3d at 304). "The touchstone of the 'economic realities' test is whether the worker is 'economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *Id.* (quoting *Schultz*, 466 F.3d at 304). "Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947). Courts apply the same FLSA economic realities test to analyze employee status under the MWHL. *See, e.g.*, *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 661 (4th Cir. 2016) ("[A]nalysis of the existence of an employment relationship is the same under the MWHL . . . as under the FLSA[.]" (citing *Campusano v. Lusitano Const. LLC*, 208 Md.App. 29, 36–38 (2012))); *Randolph v. PowerComm Const., Inc.*, 7 F.Supp.3d 561, 569–72 (D.Md. 2014) (applying the economic realities test to

determine whether the plaintiff was an employee or independent contractor under both the FLSA and MWHL); *Heath v. Perdue Farms, Inc.*, 87 F.Supp.2d 452, 458-59 (D.Md. 2000) (same).

The economic realities test to determine employee status consists of six factors,[3] none of which are dispositive:

> (1) [T]he degree of control that the putative employer has over the manner in which the work is performed;
> (2) the worker's opportunities for profit or loss dependent on his managerial skill;
> (3) the worker's investment in equipment or material, or his employment of other workers;
> (4) the degree of skill required for the work;
> (5) the permanence of the working relationship; and
> (6) the degree to which the services rendered are an integral part of the putative employer's business.

*McFeeley v. Jackson St. Ent., LLC*, 825 F.3d at 241 (quoting *Schultz*, 466 F.3d at 304-05); *see also Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 150 (4th Cir. 2017) (quoting *Schultz*, 466 F.3d at 304-05); *Hall v. DIRECTV, LLC*, 846 F.3d 757, 774 (4th Cir. 2017) (quoting *Schultz*, 466 F.3d at 304-05).

While Ms. Rousseau asserts that Plaintiff was Defendants' independent contractor, (ECF No. 20, at 2-3), Plaintiff responds

---

[3]  The court has previously noted that "[t]he 'economic reality' test to determine whether an individual is an *employer* under the FLSA, analyzes different factors than the 'economic reality' test to determine whether an individual is an *employee*." *McFeeley v. Jackson St. Ent., LLC*, 47 F.Supp.3d 260, 274 (D.Md. 2014).

that the economic realities test demonstrates that she was indeed Defendants' employee, (ECF No. 40, at 5-9).

### 1. Defendants' Degree of Control

First, Ms. Rousseau contends that Plaintiff exercised "autonomy over her work environment" and was not "subject to [Scratch Kitchen]'s scheduling practices." (ECF No. 20, at 1-2) (citing ECF No. 20-2). Plaintiff counters that Ms. Rousseau exercised control over the manner in which she performed her work because she provided "specific direction" to Plaintiff. (ECF No. 40, at 6) (quoting *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F.Supp.2d 569, 579 (D.Md. 2008)).

Some of Plaintiff's allegations are couched in conclusory language and refer to all Defendants, collectively. Labels, by themselves, may not be sufficient, particularly when they parrot elements of a legal test. With regard to Ms. Rousseau, however, there are sufficient particularized factual allegations that give context to the more conclusory allegations.

Plaintiff alleges in the complaint that Defendants "closely supervised and directed" her while she performed her duties of "cooking, food preparation, taking orders, cleaning floors and tables, and delivering food." (ECF No. 1 ¶¶ 19, 24). Specifically, Plaintiff alleges that Defendants "[h]ired and/or disciplined Plaintiff," ensured the quality of her work, in addition to setting and controlling Plaintiff's daily

10

responsibilities, conditions of employment, and schedule of working between five and seven days per week. (*Id.* ¶¶ 21-22, 33). Ms. Rousseau was the one who communicated directly with Plaintiff and with Plaintiff's counsel and sought the peace order. (*Id.* ¶¶ 6, 37, 45-46). In the petition for the peace order, Ms. Rousseau contends that Plaintiff was a contractor, and that Ms. Rousseau declined to permit Plaintiff to continue to "work" for her "business." (ECF No. 1-1, at 5). These specific alleged facts make the conclusions with regard to Ms. Rousseau sufficient to establish that Ms. Rousseau possessed a significant degree of control over Plaintiff's work.

Ms. Rousseau maintains that the Text Messages indicate that Plaintiff "had the ability to make her own schedule[.]" (ECF No. 20, at 1). The only portion of the Text Messages relating to Plaintiff's work schedule is the following message from Ms. Rousseau: "[I]f you need to change hours and stuff right now we can make it work." (ECF No. 20-2, at 1). Construed in favor of the non-moving Plaintiff, Ms. Rousseau's text message merely demonstrates that Plaintiff could change her work schedule *with Ms. Rousseau's permission*. Moreover, the remainder of the Text Messages show that Ms. Rousseau fired Plaintiff because Plaintiff immediately left Scratch Kitchen after being informed about the restaurant's policy that Plaintiff's daughter could not be in the kitchen without a hairnet—thus lending further support to

11

Plaintiff's allegations that Defendants controlled Plaintiff's conditions of employment and exercised the authority to discipline her. (*Id.* at 1-3). Therefore, this factor weighs in favor of employee status.

### 2. Plaintiff's Opportunity for Profit or Loss Dependent on Her Managerial Skills

Second, as Plaintiff argues, "[she] did not have any opportunities to earn more or less money based on her performance" because she has alleged that "Defendants paid Plaintiff on an hourly basis" and "[t]he only way for [her] to earn additional income . . . was by working additional hours[.]" (ECF No. 40, at 7). According to the complaint, "Defendants paid Plaintiff at an hourly rate between $19.00 and $20.00." (ECF No. 1 ¶ 26). Plaintiff does not allege that she had any supervisory duties during her employment at Scratch Kitchen. As a result, Plaintiff's allegations show that she lacks any profit incentive that is dependent on her managerial skills. Therefore, this factor weighs in favor of employee status.

### 3. Plaintiff's Investment in Equipment or Material, or Her Employment of Other Workers

Third, Plaintiff has sufficiently alleged that she has neither made any investment in equipment or material, nor employed other workers. Plaintiff alleges in the complaint that

> [a]t all times relevant, Defendants provided
> Plaintiff with all of the equipment and tools
> required to perform her duties, namely,

> cooking utensils, stoves, ovens, toasters,
> grills, pots, pans, and mops, brooms, and
> other cleaning supplies. At no time during
> her employment was Plaintiff required to
> provide her own equipment or tools.

(ECF No. 1 ¶ 23). Plaintiff does not allege that she employed any subcontractors.

Ms. Rousseau asserts that Exhibit 4 to her motion to dismiss, which she contends is "a handwritten note detailing the hours available for [Plaintiff] and the subcontractors [working] under her[,]" demonstrates that "[Plaintiff] operated as a contractor with the responsibility of managing subcontractors." (ECF No. 20, at 2) (citing ECF No. 20-3). In addition, Ms. Rousseau argues that Exhibit 5, which she contends is a Zelle payment receipt "for work performed by subcontractors under her supervision[,] . . . demonstrates that [Plaintiff] has the authority and responsibility to engage and compensate other individuals for their services, a characteristic commonly associated with contractor relationships." (*Id.*). As explained above, however, the court may not consider Exhibits 4 and 5 to Ms. Rousseau's motion to dismiss. Ms. Rousseau's arguments that Plaintiff employed subcontractors, alone, cannot refute Plaintiff's allegations, which must be taken as true. Construing Plaintiff's allegations in her favor, this factor weighs in favor of employee status.

### 4. Degree of Skill Required for Plaintiff's Work

Fourth, as Plaintiff contends, Plaintiff has sufficiently alleged that her duties "consisted of [so-called] low[-]skill work[.]" (ECF No. 40, at 7). According to the complaint, Plaintiff's responsibilities included "cooking, food preparation, taking orders, cleaning floors and tables, and delivering food[]"—all of which do not require a high level of technical expertise. (ECF No. 1 ¶ 19). Nor does Ms. Rousseau argue in her motion to dismiss that Plaintiff's job as a cook demanded high-skill labor. Therefore, this factor weighs in favor of employee status.

### 5. Permanence of the Working Relationship

Fifth, Plaintiff has sufficiently alleged that she had permanent working relationship with Defendants because Plaintiff asserts in the complaint that she was a "permanent employee" who worked continuously between August 2022 and August 2023. (*Id.* ¶¶ 18, 21). In challenging Plaintiff's allegation that she was a permanent employee, Ms. Rousseau argues that Exhibit 1 to her motion to dismiss, consisting of Plaintiff's Form W-9, demonstrates that "[Plaintiff] requested to provide services as an Independent Contractor[.]" (ECF No. 20, at 1). As explained above, however, the court may not consider Exhibit 1 to Ms. Rousseau's motion to dismiss. Because Plaintiff's allegation must be taken as true, this factor weighs in favor of employee status.

**6. Degree to Which the Services Rendered Are an Integral Part of Defendants' Business**

Sixth, Plaintiff has sufficiently alleged that her services are an integral part of Defendants' business.  As Plaintiff contends, Plaintiff's role as a cook is undeniably indispensable to Defendant's restaurant business.  (ECF No. 40, at 8).  Therefore, this factor weighs in favor of employee status.

**7. Consideration of All Factors**

The fact that each of the factors discussed above weigh in favor of employee status counsels in favor of the same conclusion based on the totality of the circumstances.  In sum, Plaintiffs overtime wage claims cannot be dismissed on the basis that Plaintiff is Scratch Kitchen's and Ms. Rousseau's independent contractor because Plaintiff has sufficiently alleged facts showing that she is Scratch Kitchen's and Ms. Rousseau's employee.

**B. Immigration Status**

While Ms. Rousseau appears to suggest that Plaintiff's overtime wage claims are contingent on her immigration status,[4] Plaintiff contends that "[t]he recovery Plaintiff seeks . . . is not mitigated or estopped based on her immigration status."  (ECF

---

[4] Ms. Rousseau relies on Exhibit 1 to her motion to dismiss in asserting that Plaintiff's "fail[ure] to provide valid work authorization documents" during her employment at Scratch Kitchen demonstrates that she was "not legally authorized to work in the United States[.]"  (ECF No. 20, at 1) (citing ECF No. 20-1).  As explained above, the court may not consider Exhibit 1 to Ms. Rousseau's motion to dismiss.

No. 40, at 9) (citing *Mejia v. Doc Turf Installation, LLC*, No. 07-cv-439-BEL, 2007 U.S. Dist. LEXIS 106540, at *3 (D.Md. Oct. 30, 2007); *Wondimante v. Assefa*, No. 2004-cv-3718-DKC, 2006 WL 8456990, at *3 (D.Md. Oct. 12, 2006)). Plaintiff is correct. The FLSA and MWHL cover all employees regardless of immigration status. *See Montoya*, 589 F.Supp.2d at 750 ("[T]he immigration status of a class representative is irrelevant in wage and hour cases, in light of FLSA's coverage of all workers—undocumented or not."); *Mancilla v. Chesapeake Outdoor Servs., LLC*, No. 1:22-cv-00032-JMC, 2024 WL 361328, at *2 (D.Md. Jan. 31, 2024) (stating that immigration status is "irrelevant" to determining the defendants' potential liability under the FLSA and MWHL (citing *Montoya*, 589 F.Supp.2d at 750; *Walsh v. Fusion Japanese Steakhouse, Inc.*, 585 F.Supp.3d 766, 790–91 (W.D. Pa. 2022))).  Accordingly, Plaintiff's immigration status is not a basis to dismiss Plaintiff's overtime wage claims.

## C. **Payment of Plaintiff's Final Paycheck**

Ms. Rousseau argues that Plaintiff's allegations of unpaid wages are refuted by the fact that "payment for final services rendered was made for the full $509.40 [(the sum of Plaintiff's final paycheck, without deducting for a $500 cash advance)], via Zelle per [Plaintiff]'s text request on 8/10/23." (ECF No. 20, at

2).[5]   Plaintiff counters that Ms. Rousseau "misunderstands the scope of damages Plaintiff seeks in this case[]" given that "Plaintiff seeks damages for all unpaid wages that she is owed." (ECF No. 40, at 11).   Plaintiff is correct.   In the complaint, Plaintiff seeks payment for overtime worked "[t]hroughout her employment with Defendants," and not merely the full sum of her final paycheck. (ECF No. 1 ¶ 25).   Moreover, the Text Messages contain a message from Ms. Rousseau stating that she cancelled the August 10, 2023 Zelle payment to Plaintiff. (*See* ECF No. 20-2, at 7).   Hence, the August 10, 2023 Zelle payment is not a basis for dismissing Plaintiff's overtime wage claims.

### D. Scratch Kitchen's Earnings

Ms. Rousseau suggests that Plaintiff's FLSA overtime wage claim fails because Scratch Kitchen does not earn over $500,000 annually.[6]   (ECF No. 20, at 2).   Plaintiff counters that Ms. Rousseau "has provided no evidence" apart from her unverified assertion that Scratch Kitchen does not earn over $500,000

---

[5] In support, Ms. Rousseau cites to Exhibit 6, which is not attached to the motion to dismiss.  (ECF No. 20, at 2).

[6] Although Ms. Rousseau merely asserts that "[Plaintiff]'s attorney inaccurately asserted that Scratch Kitchen . . . is an enterprise earning over $500,000 annually[,]" without directing her argument at any specific claim, as Plaintiff contends, "[t]he MWHL[, unlike the FLSA,] . . . do not make Defendants' income an element of Plaintiff's claim." (ECF No. 40, at 10 n.8).   Hence, the court construes Ms. Rousseau's argument as directed at Plaintiff's FLSA claim.

annually.    (ECF  No.  40,  at  10)  (quoting  29  U.S.C.  §
203(s)(1)(a)(ii)).

The FLSA applies to an "[e]nterprise engaged in commerce or
in the production of goods for commerce" whose "annual gross volume
of sales made or business done is not less than $500,000."  29
U.S.C.  §  203(s)(1),  (s)(1)(a)(ii).    While  Ms.  Rousseau's
unverified assertion is indeed an inadequate basis for dismissing
Plaintiff's FLSA overtime wage claim, Plaintiff's allegation—based
on  information  and  belief—that  Defendants,  together  and
individually, earn over $500,000 annually, (ECF No. 1 ¶ 13), cannot
survive a motion to dismiss without additional factual support.
As explained in *Van Buren v. Walmart, Inc.*, 611 F.Supp.3d 30, 36–
37 (D.Md. 2020), *aff'd*, 855 F.App'x 156 (4ᵗʰ Cir. 2021),

> a  complaint's  conclusory  allegations  based
> solely  "upon  information  and  belief"  are
> "insufficient to defeat a motion to dismiss."
> *Harman v. Unisys Corp.*, 356 F.App'x 638, 640–
> 41 (4ᵗʰ Cir. 2009); *see also In re Darvocet,
> Darvon, and Propoxyphene Products Liability
> Litigation*, 756 F.3d 917, 931 (6ᵗʰ Cir. 2014);
> *Mann v. Palmer*, 713 F.3d 1306, 1315 (11ᵗʰ Cir.
> 2013); *Malibu Media, LLC v. Doe*, No. 13-cv-
> 365-PWG, 2014 WL 7188822, at *4 (D.Md. Dec.
> 16, 2014).  As Judge Grimm has noted, it is
> important to differentiate "between a case in
> which pleading 'upon information and belief'
> is  used  as  an  inadequate  substitute  for
> providing detail as to why the element is
> present in an action . . . [and the] proper
> use of 'upon information and belief,' where a
> plaintiff does not have personal knowledge of
> the facts being asserted." *Malibu Media*, 2014
> WL 7188822, at *4 (citations and internal
> quotation marks omitted).  Indeed, "'pleading

on the basis of information and belief is
generally appropriate' where information is
'particularly within defendants' knowledge
and control.'" *Kajoshaj v. New York City
Dept. of Educ.*, 543 F.App'x 11, 16 (2ᵈ Cir.
2013) (quoting *Boykin v. KeyCorp*, 521 F.3d
202, 215 (2ᵈ Cir. 2008)).

That information is "particularly within
defendants' knowledge and control" is not in
and of itself decisive, however. "Pleading on
information and belief is a desirable and
essential expedient when matters that are
necessary to complete the statement of a claim
are not within the knowledge of the plaintiff
*but he has sufficient data to justify
interposing an allegation on the subject*." 5
C. Wright & A. Miller, Federal Practice and
Procedure § 1224 (3ᵈ ed., April 2019 update)
(emphasis added).

Here, even though the information regarding Defendants' earnings
is particularly within Defendants' knowledge and control,
Plaintiff has not provided any allegations suggesting that her
assertion that Defendants earn over $500,000 annually is not merely
speculation—or an improper substitute for the facts needed to show
Defendants' coverage under the FLSA.  Nothing in the complaint
supports a reasonable inference that Plaintiff is correct.  Thus,
Ms. Rousseau's motion to dismiss will be granted only with respect
to Count I.

## IV.  Mr. Correia's Motion to Dismiss

Mr. Correia argues "[a]ny claims against [him] regarding FLSA
overtime wages are without merit" and should be dismissed because
"[he] do[es] not hold any position within [Scratch Kitchen.]"  (ECF

No. 38, at 1).[7]  Plaintiff counters that "[she] has stated facts sufficient to conclude that Defendant Correia was her 'employer' for the purposes of the FLSA, the MWHL, and the MWPCL."  (ECF No. 39, at 4).

The economic realities test to determine employer status consists of four factors, none of which are dispositive: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)); *see also Campusano v. Lusitano Const. LLC*, 208 Md.App. 29, 39-40 (2012) (quoting *Newell v. Runnels*, 407 Md. 578, 651 (2009)).

Plaintiff's allegation, on information and belief, that Mr. Correia is the owner and operator of Scratch Kitchen, is devoid of the factual support necessary to render it reasonably plausible. *See Van Buren*, 611 F.Supp.3d at 36-37.  Unlike the facts recited above regarding Ms. Rousseau, there is absolutely no basic fact

---

[7] Although Mr. Correia attaches Scratch Kitchen's articles of organization to show that "ownership of Scratch Kitchen . . . is solely attributed to [Ms.] Rousseau[,]" (*see* ECF No. 38, at 1) (citing ECF No. 38-1), whether Mr. Correia's name appears in Scratch Kitchen's articles of organization is irrelevant to the determination of his employer status under the economic realities test.  More importantly, as explained above, the court may not consider Scratch Kitchen's articles of organization.

alleged as to his presence at, or conduct, regarding Plaintiff's work at Scratch Kitchen.  The complaint does not indicate why Plaintiff believes he is an owner and operator.  As a result, Plaintiff's conclusory assertions that Mr. Correia either did or "had the power to" hire, fire, control work schedule, determine the rate and method of wage payment, and maintain employment records are insufficient to allege that Mr. Correia meets the elements of the economic realities test, making him an "employer" under the FLSA and MWHL during the relevant time period.  (*See* ECF No. 1 ¶ 33).  Therefore, Counts I and III will be dismissed with respect to Mr. Correia.

**V.   Conclusion**

For the foregoing reasons, Ms. Rousseau's motion to dismiss will be granted in part and denied in part, and Mr. Correia's motion to dismiss will be granted.  Plaintiff will be granted twenty-one days to file an amended complaint with additional factual support.  The Clerk will be directed to enter the default of Scratch Kitchen.  A separate order will follow.

/s/

_____
DEBORAH K. CHASANOW
United States District Judge
