IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| FATIMA MARIA RAMIREZ RUANO | |
| | : |
| v. | : Civil Action No. DKC 23-2461 |
| | : |
| SCRATCH KITCHEN & BISTRO, LLC, | |
| et al. | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment wage dispute is the motion to vacate entry of default[1] filed by *pro se* Defendant Bernadette C. Rousseau ("Ms. Rousseau" or "Defendant").[2] (ECF No. 59). The issues have been briefed, and

---

[1] Plaintiff Fatima Maria Ramirez Ruano ("Plaintiff") has filed a motion for default judgment (ECF No. 58) which will be ruled on in due course.

[2] Ms. Rousseau states that her motion is on behalf of Defendant Vital Correia ("Mr. Correia") and Defendant Scratch Kitchen & Bistro, LLC ("Scratch Kitchen," and together with Ms. Rousseau and Mr. Correia, "Defendants"). (ECF No. 59). Ms. Rousseau was notified some time ago that she could NOT represent anyone but herself in this action. (ECF No. 21). Thus, the motion can only be considered as to Ms. Rousseau. Mr. Correia is *pro se* and he did not sign the motion as required under Fed.R.Civ.P. 11(a). Scratch Kitchen was represented by counsel earlier in the litigation, but on March 26, 2024, the court granted counsel's motion to withdraw. (ECF No. 41). Scratch Kitchen was notified that unless new counsel entered an appearance, default judgment could be entered against it. (ECF No. 37). Scratch Kitchen is an LLC, and it can only appear in this court through a licensed attorney; therefore, the court directed Scratch Kitchen to show cause why a default should not be entered on Plaintiff's claims against it. (ECF No. 41). Scratch Kitchen did not respond, and on July 24, 2024, entry of default was entered as to Scratch Kitchen. (ECF No. 44).

the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to vacate entry of default will be denied.

## I. Background

This motion stems from a long-running employment dispute. The following facts are alleged in the amended complaint, unless otherwise noted. From around August 2022 to August 2023, Plaintiff worked as a cook in Scratch Kitchen, a restaurant owned and operated by Ms. Rousseau and Mr. Correia. (ECF No. 47 ¶¶ 1, 11-12). Plaintiff was "closely supervised and directed" by Ms. Rousseau and Mr. Correia. (ECF No. 47 ¶ 24). Plaintiff alleges that she "regularly and customarily worked more than fifty" hours a week. (ECF No. 47 ¶ 25). Plaintiff alleges that she was paid between $19.00 and $20.00 an hour, and she was never paid an overtime rate. (ECF No. 47 ¶¶ 26-28). Plaintiff also alleged that Defendants failed to pay her $500.00 from her final paycheck; however, in her motion for default judgment, Plaintiff does not pursue this $500.00. (ECF Nos. 47 ¶ 83; 58, at 8; 60, at 3).

Plaintiff's last day of employment was on or around August 2, 2023. (ECF No. 47 ¶ 40). On August 10, 2023, Plaintiff sent a text message to Ms. Rousseau requesting payment of her unpaid wages. (ECF No. 47 ¶ 41). In response, Ms. Rousseau sent Plaintiff

multiple texts with expletives threatening to report Plaintiff to immigration authorities. (ECF No. 47 ¶¶ 41-46).

On August 21, 2023, Plaintiff retained counsel, and on August 30, 2023, Plaintiff's counsel sent a demand letter to Defendants for her unpaid wages. (ECF No. 47 ¶¶ 47-48). On September 7, 2023, Ms. Rousseau filed an interim peace order in the District Court of Maryland for Montgomery County seeking to prevent Plaintiff from contacting her, Mr. Correia, and all of Scratch Kitchen's contractors. (ECF No. 47 ¶¶ 50-52).

On September 11, 2023, Plaintiff filed a complaint alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* (ECF No. 1). Plaintiff asserted federal question jurisdiction over the FLSA claims and supplemental jurisdiction over the state law claims. Ms. Rousseau and Mr. Correia each filed a motion to dismiss. (ECF Nos. 20, 38). On July 24, 2024, the court granted Ms. Rousseau's motion in part and denied it in part, granted Mr. Correia's motion, directed the clerk to enter default as to Scratch Kitchen, and granted Plaintiff twenty-one days to file an amended complaint. (ECF No. 43).

On August 14, 2024, Plaintiff filed an amended complaint. (ECF No. 47). The amended complaint alleged a violation of the FLSA for overtime wages against Scratch Kitchen, as in the original complaint (Count I); violation of the FLSA for unlawful retaliation against all Defendants (Count II); violation of the MWHL for overtime wages against all Defendants (Count III); and violation of the MWPCL for unpaid wages against all Defendants (Count IV). On September 12, 2024, Plaintiff filed a motion for clerk's entry of default (ECF No. 51), and on October 7, 2024, the clerk entered default as to Ms. Rousseau and Mr. Correia. (ECF Nos. 53, 54). On December 6, 2024, Plaintiff filed a motion for default judgment as to all Defendants. (ECF No. 58). Defendants have not responded; however, on January 24, 2025, Ms. Rousseau filed a motion to vacate the clerk's entry of default. (ECF No. 59).[3] On February 7, 2025, Plaintiff filed a response in opposition to Ms. Rousseau's motion to vacate the clerk's entry of default. (ECF No. 60). To date, Ms. Rousseau has not replied, and no answer or other response to the amended complaint has been filed.

---

[3] The paper begins with the typed date of December 12, 2024, but it was not filed with the court until January 24, 2025. And the paper is described as a "motion to vacate default judgment." Of course, no judgment has yet been entered.

## II.  Standard of Review

Entry of default and motions for default judgment are governed by Fed.R.Civ.P. 55.   Under the two-step procedure, the non-defaulting party first moves for entry of default under Rule 55(a). If appropriate, the clerk is directed to enter the default, and a notice is sent to the defaulting party.   Then, the non-defaulting party may move for entry of default judgment under Rule 55(b). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the judgment may be entered by the clerk.   Fed.R.Civ.P. 55(b)(1).   Otherwise, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2). The process is as follows:

> "Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Trs. of Nat'l Elec. Benefit Fund v. Eckardt Elec. Co.,* No. 23-cv-1459-DKC, 2024 WL 473805, at *2 (D.Md. Feb. 7, 2024); *see also S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 422 (D.Md. 2005). Conclusions of law are also not deemed admitted, and therefore "[t]he court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought[.]" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

> Before entering default judgment, "[t]he court first determines whether the unchallenged factual allegations constitute a legitimate cause of action, and, if liability is established, the court then makes an independent determination of damages." *Trs. of Nat'l Elec. Benefit Fund*, 2024 WL 473805, at *2 (citing Fed.R.Civ.P. 55(a)); *see also J&J*

> *Sports Prods., Inc. v. Torres*, No. 18-cv-1001-GJH, 2019 WL 1384090, at *2 (D.Md. Mar. 27, 2019) (citing *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010)).
>
> "While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on 'detailed affidavits or documentary evidence to determine the appropriate sum.'" *Trs. of Nat'l Elec. Benefit Fund*, 2024 WL 473805, at *2 (quoting *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. 09-cv-3174-WDQ, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

*Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F.Supp.3d 669, 678-79 (D.Md. 2024).

Under Federal Rule of Civil Procedure 55(c), a court may "set aside an entry of default for good cause." Because the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), a motion to set aside a default must be "'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments,'" *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). Additionally, *pro se* motions are construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

6

"Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967).   The following factors should also be considered in considering a Rule 55(c) motion: "the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006).   "The decision to set aside a default 'lies largely within the discretion of the trial judge.'"   *Barrette Outdoor Living, Inc. v. Iron World Mfg., LLC*, No. 19-CV-03027-SAG, 2020 WL 2319110, at *2 (D.Md. May 11, 2020) (quoting *Payne*, 439 F.3d at 204).

## III. Analysis

Ms. Rousseau argues that the clerk's entry of default should be vacated because Scratch Kitchen "does not meet the definition of an enterprise covered under the Fair Labor Standards Act" and "good cause exists to set aside the default judgment as [Defendant] has meritorious defenses to the claims asserted and there has been no willful neglect or bad faith." (ECF No. 59, at 1).  Ms. Rousseau argues that considering this together with the multiple personal favors she performed for Plaintiff, and Scratch Kitchen's support for undocumented individuals in the past, "the court [should]

7

dismiss the overtime wage claim filed by Fatima Ramirez Ruano against Scratch Kitchen & Bistro and all defendants." (ECF No. 59, at 3).

Plaintiff argues that Defendants do not demonstrate good cause to vacate the entry of default because Defendants have not put forth a meritorious defense, Defendants have failed to act with reasonable promptness, Defendants are personally responsible for the default, Plaintiff would be prejudiced if the default was vacated, Defendants failed to participate in the litigation, and less drastic sanctions are not sufficient. (ECF No. 60, at 2-6).

**A. Meritorious Defense**

Ms. Rousseau argues that she has meritorious defenses to Plaintiff's claims because Scratch Kitchen is not subject to the FLSA, she paid Plaintiff her final $500.00, and Plaintiff was paid $12.20 an hour until October 19, 2023,[4] when she was offered a different position at $19.00 per hour. (ECF No. 59, at 1-2).

> To demonstrate the possibility of a meritorious defense, a defendant must "make[] a factual showing that 'would permit a finding for the defaulting party.'" *Acosta v. Vera's White Sands Beach Club, LLC*, No. 8:16-cv-00782-PX, 2019 WL 1767147, at *2 (D.Md. Apr. 22, 2019) (quoting *Russell v. Krowne*, No. 08-cv-2468-DKC, 2013 WL 66620, at *2 (D.Md. Jan. 3, 2013)); *see also Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843

---

[4] This date is likely erroneous as Plaintiff ceased working for Defendants in August 2023, and the original complaint was filed in September 2023.

F.2d 808, 812 (4th Cir. 1988) ("A meritorious
defense requires a proffer of evidence which
would permit a finding for the defaulting
party or which would establish a valid
counterclaim."). "A movant's burden for
proffering a meritorious defense is not
onerous; all that is necessary 'is to allege
sufficient facts that, if true, would
constitute a defense.'" *Acosta*, 2019 WL
1767147, at *2 (quoting *Russell*, 2013 WL
66620, at *2).

*Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F.Supp.3d 669,
680-81 (D.Md. 2024).

## 1. FLSA Claims

Ms. Rousseau argues that Plaintiff's claim that Scratch
Kitchen earns over $500,000 a year is incorrect, and Ms. Rousseau
attached financial statements detailing Scratch Kitchen's sales
data. (ECF Nos. 59, at 1; 59-1; 59-2). Additionally, Ms. Rousseau
argues that Scratch Kitchen is a small, local café that is not
engaged in interstate commerce. (ECF No. 59, at 1). Therefore,
Ms. Rousseau contends that Scratch Kitchen is not governed by the
FLSA, and Defendants cannot be liable under the FLSA.

Plaintiff argues that this is not a meritorious defense
because, in her amended complaint, Plaintiff is no longer asserting
an FLSA wage claim against Ms. Rousseau and Mr. Correia. (ECF No.
60, at 3). In her motion for default judgment, Plaintiff asserts
that "[a]lthough Plaintiff's [amended complaint] retains a claim
for unpaid wages under the FLSA against Defendant Scratch Kitchen

9

(Count I), Plaintiff does not seek Default Judgment under this count. Plaintiff intends to dismiss Count I after a default judgment has been entered." (ECF No. 58, at 8 n.6). Plaintiff also argues that Defendants have not addressed her FLSA retaliation claim. (ECF No. 60, at 3-4). In her motion for default judgment, Plaintiff argues that even if Defendants are exempt from the FLSA wage requirements, Defendants can still be liable for retaliation under the FLSA. (ECF No. 58, at 15-17).

The Fair Labor Standards Act overtime provision in 29 U.S.C. § 207 (a)(1) provides that "no employer shall employ any of his employees who . . . is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours . . . ." unless paid overtime. As Ms. Rousseau states, under 29 U.S.C. § 203(s)(1), an enterprise means 1) an enterprise engaged in commerce, meaning "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof," or 2) "an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203 (c), (s)(1)(A)(ii). The enterprise requirements do not, however, apply to the anti-retaliation provision of the FLSA, which is in another section of the statute. Under the FLSA, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint

10

or instituted or caused to be instituted any proceeding under or related to this chapter . . . ."  29 U.S.C. § 215(a)(3).

In *Morrison v. Crabs on Deck, LLC*, Judge Grimm wrote that "the employee need not 'be engaged in activities covered by the Act's wage and hour provisions in order for the strictures against discriminatory discharge to be invoked.'"  No. 17-3347-PWG, 2018 WL 5113671, at *4 (D.Md. Oct. 19, 2018) (quoting *Wirtz v. Ross Packaging Co.*, 367 F.2d 549, 550-51 (5ᵗʰ Cir. 1966)).  That finding is in accord with the decisions of many other courts.  Several district courts in New York have found that an employer is not required to be an enterprise in order to be subject to an FLSA retaliation claim.  *See, e.g.*, *Han v. Shang Noodle House, Inc.*, No. 20CV2266, 2023 WL 5755213, at *8 (E.D.N.Y. Sept. 5, 2023) ("The Court . . . holds that Plaintiff's FLSA retaliation claim is not subject to the statute's enterprise coverage requirement."); *Savor Health, LLC v. Day*, No. 19-CV-9798, 2022 WL 912236, at *8 (S.D.N.Y. Mar. 29, 2022) (noting the lack of binding law in the Second Circuit and siding with the reasoning of district courts in the circuit that held that "[t]he finding that [the plaintiff] has failed to plead the interstate commerce and revenue elements that are required for her FLSA wage claims does not preclude her FLSA retaliation claims"); *Li v. Chinese Nail Salon Ass'n of E. Am. Inc.*, No. 20-CV-6390, 2024 WL 866248, at *8 (E.D.N.Y. Feb. 28,

11

2024)(quoting *Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1135 (10th Cir. 2018) ("The anti-retaliation provision of the FLSA, however, does not include the same requirement that a covered entity be an 'enterprise engaged in commerce' and '[s]everal circuit courts have [] concluded that FLSA's prohibition on retaliation applies regardless of whether an employer qualifies as an enterprise engaged in commerce.'")).

In addition, a district court in Washington, D.C. stated that even if the defendant was not an enterprise, the court would "proceed[] under the assumption" that the defendant was subject to the FLSA's anti-retaliation provision. *Benton v. Laborers' Joint Training Fund*, 121 F.Supp.3d 41, 55 n.11 (D.D.C. 2015). Similarly, a district court in Utah found that "[t]he retaliation provision of the FLSA in § 15(a)(3) does not have the same 'commerce' requirements of the other provision in § 15(a)." *Perez v. Foreclosure Connection, Inc.*, No. 2:15CV653, 2016 WL 4435209, at *2 (D.Utah Aug. 19, 2016). "The FLSA's prohibition on retaliation is broader than its coverage of minimum wage or overtime wage violations, and applies even if the employee cannot show individual coverage or enterprise coverage." *Id.* (first citing *Wirtz*, 367 F.2d at 550-51; then citing *Sapperstein v. Hager*, 188 F.3d 852, 856-57 (7th Cir. 1999); and then citing *Dean v. Pac. Bellwether, LLC*, 996 F.Supp.2d 1044, 1054-55 (D.N.Mar.I. 2014)). Ms.

12

Rousseau's assertion that Scratch Kitchen does not meet the definition of an enterprise covered by the FLSA because it does not earn over $500,000 a year and is not engaged in interstate commerce, does not present a meritorious defense to the retaliation claim.  Scratch Kitchen, and, more importantly, Ms. Rousseau, do not need to be an enterprise in order for Plaintiff to bring a claim for FLSA retaliation.

### 2.  MWHL and MWPCL Claims

Plaintiff's state law claims in the amended complaint seek overtime compensation and liquidated damages in count III, and the same overtime wages plus $500.00 allegedly withheld from her last paycheck, plus treble damages, in count IV.  (ECF No. 47 ¶¶ 73-84).  The amended complaint asserts that Plaintiff worked, customarily, more than fifty hours per week, and was never paid time and a half for the hours over forty.  (ECF No. 47 ¶¶ 25, 75).  Ms. Rousseau addresses the remaining claims together and argues that she has meritorious defenses because Plaintiff "received a $500 cash advance in front of a witness[] during the second week of July."  (ECF No. 59, at 2).  Therefore, when Plaintiff requested final payment of $509.40, Plaintiff was only owed $9.40.  (ECF No. 59, at 2).  Nevertheless, "[i]n a final demonstration of good[]will," Plaintiff was paid the full $509.40 through Zelle.  (ECF No. 59, at 2).  Ms. Rousseau cites to "Ex. 2" for support,

13

but there is no Exhibit 2 attached to her motion. Additionally, Ms. Rousseau notes that Plaintiff did not include this $500.00 in her motion for default judgment, which Ms. Rousseau claims is "because [it] is easily proven false." (ECF No. 59, at 2).

Ms. Rousseau also disputes that Plaintiff was paid $19.00 an hour from the beginning. (ECF No. 59, at 2). Ms. Rousseau asserts that Plaintiff initially was paid $12.20 an hour "on an as needed basis." (ECF No. 59, at 2). Additionally, when the restaurant was first opened, it operated only three days a week, from 9 am until 2 pm. (ECF No. 59, at 2). Ms. Rousseau asserts that on October 19, 2023,[5] she offered Plaintiff $19.00 an hour to work as a chef as needed. (ECF No. 59, at 2).

Plaintiff argues that Ms. Rousseau has not put forth a meritorious defense because Plaintiff is not seeking damages for the $500.00 in her motion for default judgment, "and it is therefore moot." (ECF No. 60, at 3). Additionally, Plaintiff argues that even if she initially was paid $12.20 an hour, her overtime wage claim remains because Ms. Rousseau only disputes the rate of payment, and not whether Plaintiff was paid overtime wages. (ECF No. 60, at 3). Plaintiff also argues that if Ms. Rousseau's assertions are true, Plaintiff would also have an additional claim for unpaid minimum wages, because the minimum wage for small

---

[5] As noted in footnote 3, this date is likely erroneous.

14

employers in Maryland in 2023 was $12.80 an hour.  (ECF No. 60, at
4) (citing Md. Code Ann., Lab. & Empl. § 3-413(c)(2)(i)).

As both parties note, in her motion for default judgment,
Plaintiff does not pursue the $500.00 unpaid wages claim under the
MWPCL.[6]  Plaintiff instead requests $5,080.00 in overtime wages
under the MWHL and MWPCL, as well as liquidated damages under the
MWPCL or MWHL.  (ECF No. 58, at 8-14).  Ms. Rousseau has not put
forth a defense regarding liability for the overtime wages because
she has only disputed Plaintiff's initial rate of pay, and not
that Plaintiff customarily worked more than forty hours per week
and was not paid time and a half for the excess hours.  Even
construing Ms. Rousseau's assertions that Plaintiff was working
"on an as needed basis," and that the restaurant operated only
three days a week from 9 am until 2 pm, broadly to argue that
Plaintiff is not entitled to overtime, Ms. Rousseau has not argued
that Plaintiff did not work as many hours as Plaintiff asserts.
Therefore, Ms. Rousseau has not put forth a meritorious defense as

---

[6] In a heading in her motion for default judgment, Plaintiff
writes that "DEFENDANTS ARE LIABLE TO PLAINTIFF FOR $5,580.00 IN
UNPAID WAGES UNDER THE MWHL AND MWPCL." (ECF No. 58, at 8).  This
number appears to be a typological error because, in the body of
the motion, Plaintiff requests $5,080 in overtime wages under the
MWHL and MWPCL, and she does not discuss the remaining $500.00.
Additionally, in her opposition to Ms. Rousseau's motion to vacate
entry of default, Plaintiff explicitly states that she "Plaintiff
did not seek damages for this [$500.00] amount in her Motion for
Default Judgment." (ECF No. 60, at 2).

to Plaintiff's claims, and this factor weighs against granting Ms. Rousseau's motion to vacate entry of default.[7]

**B. Reasonable Promptness**

Ms. Rousseau does not address the timeliness of her motion. She does, however, contend that Scratch Kitchen obtained loans and donations to hire an attorney, but Plaintiff "refused all reasonable settlement amounts," and Scratch Kitchen was forced to proceed without an attorney after the legal bills were too costly. (ECF No. 59, at 3).

Plaintiff states that the default was entered against Scratch Kitchen on July 24, 2024, and against Ms. Rousseau and Mr. Correia on October 7, 2024. (ECF No. 60, at 4). Ms. Rousseau only filed the motion to vacate on January 24, 2025, over three and a half months later. (ECF No. 60, at 4). Plaintiff argues that this delay is not reasonably prompt, and Ms. Rousseau has not given any justification for the delay. (ECF No. 60, at 4). Additionally,

---

[7] Plaintiff has already filed a motion for default judgment, attaching her own declaration as well as exhibits. (ECF No. 58). Defendants did not respond except for Ms. Rousseau's motion to vacate entry of default. As noted above, this *pro se* filing is titled "motion to vacate default judgment" and was dated a few days after the motion for default judgment was filed. The motion is not verified and is not accompanied by any declarations. Defendants will be given one final opportunity to respond to the motion for default judgment in writing. As discussed at the outset of this memorandum opinion, the motion for default judgment may be decided on the papers without a hearing, if the record supports the damages sought.

Plaintiff filed her motion for default judgment on December 6, 2024, and Ms. Rousseau has not responded. (ECF No. 60, at 4).

"Courts must consider the specific 'facts and circumstances of each occasion' when determining whether a defendant acted in a reasonably prompt manner when moving to set aside a default." *Propps v. Kirkpatrick*, No. CV 21-01744-SAG, 2021 WL 4951930, at *2 (D.Md. Oct. 25, 2021) (quoting *Prescott v. MorGreen Solar Sols., LLC*, 352 F.Supp.3d 529, 537 (E.D.N.C. 2018)). This court has found that a delay of less than a month constituted reasonable promptness. *Lorenzo v. Stansbury Bldg. Serv., Inc.*, No. 22-CV-459-DKC, 2022 WL 4608143, at *2 (D.Md. Sept. 30, 2022). Ms. Rousseau filed the motion to vacate entry of judgment over three months after the clerk's entry of default. Additionally, while Ms. Rousseau has explained that Scratch Kitchen's counsel was terminated due to the high costs of litigation, she has not provided any explanation as to her delay in filing the motion to vacate on her own behalf. Although the length of delay is not egregious considering Ms. Rousseau's *pro se* status, this delay still weighs slightly in favor of denying Ms. Rousseau's motion to vacate.

**C. Other Factors**

Ms. Rousseau does not address the remaining *Payne* factors, but she asserts that Scratch Kitchen has a history of supporting

"undocumented and newly immigrated students" by sponsoring Thanksgiving meals. (ECF No. 59, at 2-3). Additionally, Ms. Rousseau details multiple favors she did for Plaintiff, including extending personal loans, loaning her a car, and purchasing clothes. (ECF No. 59, at 3). Ms. Rousseau also states that Plaintiff failed to include her own racist text messages in the text conversation Plaintiff included as an exhibit. (ECF No. 59, at 3).

Plaintiff argues that the remaining *Payne* factors — personal responsibility, prejudice, history of dilatory action, and availability of less drastic sanctions — weigh in favor of denying the motion to vacate. (ECF No. 60, at 5-7).

## 1. Personal Responsibility

Plaintiff argues that Ms. Rousseau is personally liable for the default. (ECF No. 60, at 5). Ms. Rousseau, as a *pro se* party, is personally responsible for the delay. *Cf. Brightwell v. Hershberger*, No. 11-CV-3278-DKC, 2016 WL 7157418, at *4 (D.Md. Dec. 8, 2016) (citations omitted) ("Prior cases considering this factor have focused on whether the default, delay, or dilatory issues were caused by the defaulting party or instead by his attorney."). Therefore, this factor weighs in favor of denying the motion to vacate entry of default.

**2.    Prejudice**

Plaintiff argues that she would be prejudiced if the default is vacated because it would cause further delay in resolving the litigation, and Plaintiff incurred significant attorney's fees related to her motion for default judgment. (ECF No. 60, at 5). "When deciding whether to vacate default, as in many other contexts, simple delay does not, in and of itself, constitute prejudice to the opposing party." *Timilon Corp.*, 738 F.Supp.3d at 683 (quoting *Russell*, 2013 WL 66620, at *3). Plaintiff has asserted that she would be prejudiced because of the delay and the attorney's fees. Delay alone does not constitute prejudice; therefore, this factor weighs slightly in favor of granting the motion to vacate entry of default.

**3.    History of Dilatory Action**

Additionally, Plaintiff argues that Defendants have "repeatedly failed to participate in this litigation" by being in default, not responding to Plaintiff's motion for default judgment, and failing to file an answer or other response to Plaintiff's amended complaint. (ECF No. 60, at 5-6). Although Ms. Rousseau has previously failed to file timely responses and has yet to file an answer or other response to Plaintiff's amended complaint, because Ms. Rousseau is a *pro se* litigant, this factor

will only weigh slightly in favor of denying the motion to vacate entry of default.

### 4.    Availability of Sanctions Less Drastic

Plaintiff also argues that less drastic sanctions such as attorney's fees are insufficient "because Defendants have represented [that] they lack the financial ability to pay such a sanction."  (ECF No. 60, at 6-7).  By Plaintiff's logic, Ms. Rousseau would similarly be unable to pay a judgment entered against her.  Further, "[c]ourts have concluded that sanctions less drastic than final judgment can 'include monetary sanctions for the costs of litigating the entry and setting aside of the default order.'" *Timilon Corp.*, 738 F.Supp.3d at 683 (quoting *Acosta*, 2019 WL 1767147, at *4).  Therefore, this factor weighs in favor of granting the motion to vacate entry of default.

Prejudice and the availability of less drastic sanctions support granting the motion to vacate entry of default, and personal responsibility and history of dilatory action support denying the motion to vacate entry of default.  Taken together with Ms. Rousseau's lack of meritorious defense and her delay, the factors supporting denial of the motion to vacate outweigh the factors supporting granting the motion to vacate.

**IV.  Conclusion**

  For the foregoing reasons, Ms. Rousseau's motion to vacate entry of default will be denied.  A separate order will follow.


                /s/
          DEBORAH K. CHASANOW
          United States District Judge